```
FRANK N. DARRAS #128904, Frank@DarrasLaw.com
LISSA A. MARTINEZ #206994, LMartinez@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com
DARRASLAW
3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone:  (909) 390-3770
Facsimile:  (909) 974-2121
```

Attorneys for Plaintiff
JAMES LEWIS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LEWIS,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that Borden Companies Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by Borden Companies to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, James Lewis ("Plaintiff" and/or "Mr. Lewis"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that Defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district.  Since on or about November 1, 1956, LINA has been registered as a corporation with the State of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of Borden Companies, its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number RBO0030000 that had been issued by Defendant LINA to Borden Companies to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. LINA both funds and decides whether claimants will receive benefits under the Plan and as such suffers from a structural conflict which requires additional skepticism.

9. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plans, if Plaintiff became disabled, LINA promised to pay long term

disability benefits to Plaintiff as follows:

- Benefit Waiting Period: 184 days.
- Disability Benefit: 60% of Monthly Earnings (less other disability income), up to a maximum of $3,000 per month.
- Minimum Disability Benefit: $50
- Maximum Benefit Period: Age 65
- Definition of Disability/Disabled:
    - The Employee is considered Disabled if, as a result of injury or sickness of a Covered Employee (a) during the first 907 consecutive days (30 months and one week) of such inability to perform the functions of his or her job while not engaging in any occupation for compensation or profit…and (b) thereafter to perform each and every function for which he or she is or becomes reasonably qualified by training, education, or experience…

10. Prior to his disability under the terms of the Plan, on or about February 20, 1996 Plaintiff, who had been employed with Borden Companies was working as Process Technician.

11. However, Plaintiff became disabled under the terms of the Plan and timely submitted a claim to LINA for payment of disability benefits.

12. LINA initially approved and paid Plaintiff's LTD benefits.

13. However, on or about September 25, 2014, LINA unreasonably and unlawfully denied Plaintiff's claim. And, on or about July 29, 2015 and July 12, 2016, LINA unreasonably and unlawfully upheld its denial of Plaintiff's claim.

14. According to LINA's denial letters:

- **September 25, 2014**: "After completing our review of your claim, we are unable to determine you eligible for benefits beyond September 24, 2014."
- **July 29, 2015:** "After completing our review of Mr. Lewis' claim, we

are unable to continue paying benefits beyond October 25, 2014...A second appeal request is not required but will be accepted if you have different or additional information to submit."

- **July 12, 2016**: "After completing our review of your claim, we must uphold our prior decision to deny your claim...You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal."

15. In so doing, LINA unreasonably and unlawfully relied upon the opinions of physicians who were financially biased and/or not qualified to refute the findings of Plaintiff's board certified physicians; relied strictly upon physical requirements of occupation instead of taking into consideration the non-exertional requirements of Plaintiff's own, or any, occupation; and misrepresented the terms of the Policy.

16. Additionally, LINA knew, or should have known, that the documentation submitted to and/or obtained by LINA clearly substantiated Plaintiff's disability, including, but not limited to, the following:

7/30/12 Lumbar MRI
- IMPRESSION:
  - At L4-5, there is disc bulging and thickening with probable calcification of the ligamentum flavum along with facet arthropathy creating spinal stenosis with impingement on the traversing right L5 nerve root. There is also neural foramina] stenosis greater on the right at this level. Also, broad-based right foraminal disc protrusion at L3-4 and annular bulging L5-S1. Facet arthropathy at both of these levels as well.

1/11/13 MRI of the Cervical Spine
- Impression:
  - C5-6 central disc protrusion compatible with disc herniation. This is in contact with the ventral aspect of the cord.

- o Bilateral foraminal stenosis is also present at C5-6.

10/8/13 Dr. Ward Letter

- Patient is permanently and totally disabled.

11/27/13 Dr. Marshall Letter

- I have Mr. Lewis on multiple medications and he has received treatments from other physicians but as of his most recent visit in August of this year he was still quite symptomatic to the point that it is my medical opinion that he is unable to pursue gainful employment.

2/13/14  Dr. Babineaux Office Visit Note

- P/E:
    - Musculoskeletal:
        - Left upper extremity: swelling, tenderness.
    - Neurologic:
        - Sensation: pain and decreased
    - Cervical spine:
        - Palpitation: tenderness at upper left paraspinal muscles, upper right paraspinal muscles, lower left paraspinal muscles, and lower right paraspinal mucles.
        - ROM: flexion less than 50% of normal.
    - Lumbar spine:
        - Palpitation: tenderness at upper left paraspinal muscles, upper right paraspinal muscles, lower left paraspinal muscles, and lower right paraspinal muscles.
        - ROM:  moderately decreased.

3/12/14  Lacey Boudeaux, PT-Functional Capacity Evaluation

- Gait: Client presents with the following gait deviations: decreased trunk rotation, decreased step length, decreased knee flexion and extension, and decreased hip

extension bilaterally. He ambulates with a trunk lean backwards and with BLE externally rotated, R>L.

- Coordination: UE: very slow and unable to increase speed, constant tremors noted in BUE; BLE: slow and labored movements
- Movement Characteristics (speed, smoothness, posturing): Poor quality of movement, Client demonstrates constant tremor in BUE/hands. His movements are slow and labored, and require much focus and concentration overall from client. He is unable to perform quick, instinctive movements.
- Atrophy/Edema: Client presents with atrophy of B quad musculature.
- Muscle Tone Spasms: Increased muscle tone of thoracic and upper lumbar paraspinals bilaterally, R>L
- Musculoskeletal system:
    - Neck:
        - Extension: 24/45
        - Right lateral flexion: 17/45
        - Left lateral flexion: 14/45
        - Right rotation: 56/90
        - Left rotation: 60/90
    - Trunk:
        - Flexion: 42/80
        - Extension: 5/30
        - Right lateral flexion: 17/35
        - Left lateral flexion: 10/35
        - Right rotation: severely limited
        - Left rotation: severely limited
    - Comments: Client demonstrates poor quality of motion. His movements are slow, labored, and "jerky", and he reports pain with all measurements. Client

| | |
|---|---|
| 1 | requires UE support to stand back up from trunk flexion and during trunk |
| 2 | extension. |
| 3 | o  Shoulder: |
| 4 | ▪ Forward flexion: right: 105/180 left: 135/180 |
| 5 | ▪ Extension: right: 50/60 left: 56/60 |
| 6 | ▪ Abduction: right: 79/180 left: 120/180 |
| 7 | ▪ Internal rotation: right: 39/70 left: 33/70 |
| 8 | ▪ External rotation: right: 24/90 left: 30/90 |
| 9 | o  Elbow: |
| 10 | ▪ Flexion: right: 120/150 left 130/150 |
| 11 | ▪ Extension: right -9 |
| 12 | o  Wrist: |
| 13 | ▪ Flexion:  right: 25/80 left: 38/80 |
| 14 | ▪ Extension: right 30/70 left: 50/70 |
| 15 | o  Comments: Client demonstrates slow, labored movements, and has no |
| 16 | smoothness to his motions. He presents with grossly, overall poor UE |
| 17 | quality of motion. Client reports pain with all UE ROM measurements, During |
| 18 | MMT strength assessment, he reports pain with all testing except bilateral |
| 19 | shoulder internal and external rotation, L elbow flexion and extension, and |
| 20 | bilateral wrist ulnar and radial deviation. |
| 21 | o  Hip |
| 22 | ▪ Flexion: right: 63/120 left: 84/120 |
| 23 | ▪ Abduction: right: 31/45 left: 23/45 |
| 24 | o  Knee: |
| 25 | ▪ Flexion: right: 114/135 left: 122/135 |
| 26 | o  Ankle: |
| 27 | ▪ Plantar flexion: right: 36/50 left: 25/36 |
| 28 | ▪ Dorsiflexion: right: 9/20 left: 7/20 |

COMPLAINT

| | |
|---|---|
| 1 | • Neuromusclar system: |
| 2 |    o Sensory testing: UE/LE sensation is abnormal. |
| 3 | 3/14/14 Dr. Ward Office Visit Note |
| 4 | • Physical Exam: |
| 5 |    o Musculoskeletal: |
| 6 |       ▪ Left upper extremity: swelling, tenderness. |
| 7 |    o Neurologic: |
| 8 |       ▪ Sensation: pain and decreased |
| 9 |    o Cervical spine: |
| 10 |       ▪ Palpitation: tenderness at upper left paraspinal muscles, upper right |
| 11 | paraspinal muscles, lower left paraspinal muscles, and lower right |
| 12 | paraspinal mucles. |
| 13 |       ▪ ROM: flexion less than 50% of normal. |
| 14 |    o Lumbar spine: |
| 15 |       ▪ Palpitation: tenderness at upper left paraspinal muscles, upper right |
| 16 | paraspinal muscles, lower left paraspinal muscles, and lower right |
| 17 | paraspinal muscles. |
| 18 |       ▪ ROM: moderately decreased. |
| 19 | 4/14/14 Dr. Ward Office Visit Note |
| 20 | • Physical Exam: |
| 21 |    o Musculoskeletal: |
| 22 |       ▪ Left upper extremity: swelling, tenderness. |
| 23 |    o Neurologic: |
| 24 |       ▪ Sensation: pain and decreased |
| 25 |    o Cervical spine: |
| 26 |       ▪ Palpitation: tenderness at upper left paraspinal muscles, upper right |
| 27 | paraspinal muscles, lower left paraspinal muscles, and lower right |
| 28 | paraspinal mucles. |

- ROM: flexion less than 50% of normal.
  - Lumbar spine:
    - Palpitation: tenderness at upper left paraspinal muscles, upper right paraspinal muscles, lower left paraspinal muscles, and lower right paraspinal muscles.
    - ROM: moderately decreased.

4/29/14 Dr. Marshall Office Visit Note
- Physical Exam:
  - Musculoskeletal examination reveals degenerative changes in the proximal and distal interphalangeal joints of most fingers.
  - He does have some thickening of the flexor tendon on the third digit of the right hand.
  - There is positive Tinel sign at the level of the elbow both in the left and the right arm suggestive of ulnar neuropathy.
  - Shoulder mobility is quite restricted on the left less so on the right and he does have enlargement of both acromioclavicular joints consistent with impingement syndrome.
  - Right knee demonstrates synovitis in instability.
  - He has degenerative changes in the forefoot the first metatarsal phalangeal joint and has palpation tenderness between the second and third and fourth digits consistent with Morton's neuroma.
  - He has multiple tender points.

8/9/14 Dr. Marshall Office Visit Note
- Physical Exam:
  - Cervical spine is moderately restricted.
  - Spurling maneuver positive to the left.
  - Scoliosis concave to the left.
  - Knees demonstrate moderate synovitis and instability. Multiple tender points.

8/21/14 MRI of the lumbar spine

- Findings: The lumbar spinal alignment is significant for grade 1 anterolisthesis of L4 relation to L5. There is loss of disk space height with degenerative endplate change and disk desiccation at L4-5 and L5-51. There is an annular tear at L5-S1.
- L2-3 facet hypertrophy
- L3-4 facet hypertrophy
- L4-5 facet hypertrophy-bilateral facet effusion, ligamentum flavum thickening and a mild disc bulge which creates moderate to severe bilateral neural foraminal stenosis.
- L5-S1 Facet hypertrophy with a disc bulge that creates moderate to severe bilateral neural foraminal stenosis.

8/21/14 MRI of the Cervical Spine

- Findings: There is disk desiccation identified from L3-4 through 13-6 with loss of disk space height at L5-S1.
- C2-3: Facet hypertrophy.
- C3-4: Facet hypertrophy with uncovertebral spurring.
- C4-5: Facet hypertrophy.
- C5-6: Facet hypertrophy with a posterior disk osteophyte complex which creates moderate to severe left-sided and moderate right-sided neural foraminal stenosis.
- C6-7: Facet hypertrophy.
- C7-T1: Facet hypertrophy

9/30/14 Dr. Clark Office Visit Note

- Physical Exam:
  - General:
    - tremor on observation
    - forward abduction to only 140 degrees with pain at end range due to bilateral shoulder impingement
  - neurologic:

- Revealed diminished reflexes in all 4 extremities with absent sensation to pin prick in a glove distribution to both hands and a stocking distribution of both lower legs.
- Fine motor coordination was diminished in both hands to a significant degree.
- Action tremor with manual motor commands with both hands.

12/18/14 Dr. Marshall Office Visit Note
- Physical Exam:
- Cervical spine is moderately restricted.
- Spurling maneuver positive to the left.
- Scoliosis concave to the left.
- Knees demonstrate moderate synovitis and instability.
- Multiple tender points.

2/25/15 Dr. Clark Attending Physician Statement
- Sitting: constantly 1 hour max
- Standing: 1 hour max
- Walking: 1 hour max

3/9/15 Dr. Baird Letter
- In combination these medical conditions have severely limited his functional capacity. Not just from his physical standpoint his ability to do physical work but at the same time the ability to actively participate in any type of work.

3/11/15 Dr. Marshall Letter
- I believe that when one considers the sum total of all his problems that it is clear that he is certainly disabled. I would certainly consider Mr. Lewis as being disabled.

5/12/16 Dr. Clark Letter
- The combination of his multiple medical issues combined with his neurologic and orthopaedic issues and chronic pain condition preclude him returning to work in a competitive job market. This patient is not able to work and is fully disabled.

17. To date, even though Plaintiff has been disabled, LINA has not paid Plaintiff any disability benefits under the Policy since on or about October 25, 2014. The unlawful nature of LINA's denial decision is evidenced by, but not limited to, the following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to: failing to timely advise Plaintiff of what specific documentation it needed from her to perfect her claim; and, failing to provide a complete copy of all documents, records, and other information relevant to her claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);
- LINA ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,
- LINA ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, LINA's highly conflicted physicians' opinions do not serve as substantial evidence, as they are not supported by evidence in the claim file, were not issued by physicians with the same level of medical expertise as the board certified treating physicians, nor are they consistent with the overall evidence in the claim file.

18. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a

conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

19. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

20. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about October 25, 2014 to the present date.

21. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

22. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan's definitions of disability and consequently she is entitled to all benefits from the Plan to which she might be entitled while receiving disability benefits which included, but are not limited to reimbursement of all expenses and premiums paid for such benefits from the termination of benefits to the present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid to Plaintiff beginning on or

about October 25, 2014 together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid, plus all other benefits from the Plan to which he might be entitled while receiving disability benefits which included but are not limited to reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plans;

2. An order determining Plaintiff is entitled to future disability payments/benefits provided under the plan so long as he remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: February 13, 2017

DarrasLaw

_____
PHILLIP S. BATHER
Attorneys for Plaintiff
JAMES LEWIS